STATE, ICHABOD AYERS, PROSECUTOR, v. THE BOARD OF POLICE COMMISSIONERS OF NEWARK.

1. A charge against a policeman for incapacity, based on the report of the examining physician, and made by the direction of the commissioners, is for good cause and in proper form, within statutes of May 2d, 1885 (*Pamph. L.*, p. 326), March 25th, 1885 (*Pamph. L.*, p. 163), February 23d, 1886 (*Pamph. L.*, p. 48).

2. A reasonable notice and a fair hearing and investigation, without formality in the procedure, are all that is required.

3. The court, on *certiorari*, will not weigh the evidence. It is sufficient if there is a legal and substantial basis for removal on which the commissioners acted, within their authority.

4. Police officers, serving under the appointment and authority of the board of police commissioners, are not in position to question the constitutionality of the act constituting the board, on *certiorari*.

---

On *certiorari*, return and proofs.

Argued at June Term, 1886, before Justices SCUDDER and MAGIE.

For the prosecutor, *J. Frank Fort.*

For the defendants, *Joseph Coult.*

The opinion of the court was delivered by

SCUDDER, J.   The state of the case agreed on by counsel shows these facts: that the police commissioners of the city of Newark were appointed by the mayor, and their appointment confirmed by the council, under the "Act to remove the fire and police departments in the cities of this state from political control," approved May 2d, 1885 (*Pamph. L., p.* 326), which act was adopted by a vote of the city as therein required; that of the four commissioners, two were selected from each of the two political parties which had cast and polled the greatest number of votes at the last preceding municipal election, and had the other qualifications required by the act; that the prosecutor was appointed a policeman by the common council prior to the statute; that a charge and specification in writing was made by the chief of police, April 29th, 1886, that the prosecutor, Patrolman Ichabod Ayres, was incapacitated for duty, because on examination by the police surgeon he was found to be almost totally deaf in the left ear, the left eye to have very imperfect vision, and on account of his general physique and age.   Upon this charge he was dismissed.

The eighth section, in the second clause, says: "And the said board of police commissioners shall be fully authorized and empowered to designate, appoint or approve all the policemen or other persons employed in the police department of such city, and said respective boards shall have full power and right to suspend and to expel or discharge any person employed in or under the department under the control of such board, provided good cause shall be shown for such suspension, expulsion or discharge, after an investigation by such board."   A power to remove an officer "for cause" can be exerted only for good cause, and after the officer has had an opportunity for defence.   *Haight* v. *Love,* 10 *Vroom* 14.

What in legislative intention is good cause for such suspen-

sion, expulsion or discharge, will be found in a statute *in pari materia*, passed at the same session of the legislature March 25th, 1885 (*Pamph. L., p.* 163, § 1), amended by act of February 23d, 1886 (*Pamph. L., p.* 48), entitled "An act respecting police departments of cities, and regulating the tenure and terms of officers and men employed in said departments." The amendatory act does not change the section in this particular, and both say that "no person shall be removed from office or employment in the police department of any city, or from the police force of any city, for political reasons, or for any other cause than incapacity, misconduct, non-residence, or disobedience of just rules and regulations established, or which may be established for the police force or police department of such city." Within these terms of the law, the specific charge against the prosecutor would be incapacity, and no other cause of discharge appears in the facts of the case.

The reasons assigned for reversal are, first, that the charge was not made by the chief of police on his own motion, or voluntarily, but by the direction of the commissioners. This officer, in his testimony, states his position very distinctly. He says : "I simply acted my part in the law in formulating the charge. I made the charges on the certificate of the physician, and by the direction of the commissioners."

There is no objection to this action by the chief of police and the board of commissioners. Their proceeding was a mere form to put the charge in shape for a proper investigation ; not voluntarily and without assigning good cause, but in the discharge of their official duty, and for a cause based on the report of the examining physician of the board.

Another reason assigned is that the prosecutor was not served with a statement of the grounds of the charges, and no proper notice of the substance thereof. The later statute of May 2d, 1885, is silent as to the procedure for removal or discharge of a policeman from his employment; but section 5 of the act of March 25th, 1885, is particular in the requirement of a written charge of the cause of complaint, signed by the person making such charge, filed in the office of the de-

partment, a public examination into the charge by the appropriate municipal board, reasonable notice, a fair trial and every reasonable opportunity to make his defence, if any he has or chooses to make.

A fair trial does not mean that all the formalities shall be observed that are used in the trial of criminals for minor offences in courts or by magistrates. The policeman under charges is not regarded by this statute as a criminal, but a public agent or servant whose efficiency and fitness for the discharge of his duties may be questioned at any time in the interest of the public, and no mere forms tending to chicanery and delay, rather than substantial justice, should be regarded. The purpose of the law is to secure the services of reliable men to preserve the public peace, not to keep inefficient and litigious men in office until all the forms of criminal cases are observed, and every ingenious objection answered. See *Devault* v. *Mayor of Camden,* 19 *Vroom* 433. Notice in writing was given to the prosecutor on May 4th, and of hearing on May 8th, to be present with witnesses, and the charge stated of being incapacitated for duty. He appeared with counsel at the time and place specified in the notice, made no objection to the notice, the charge with specifications was read to him, and he pleaded to it, not guilty. Witnesses were produced, examined and cross-examined by both parties; at the close of the examination all the commissioners voted that he be removed for incapacity. This was a fair trial within the terms of the statute. *High Ex. Rem.* 411; *Rex* v. *Wilton,* 2 *Salk.* 428; *S. C.,* 5 *Mod.* 257. The testimony showed that he was about sixty years old, that he was partially deaf, and had imperfect sight in one eye; and the chief of police testified that a man having these infirmities is not a proper person for a police officer. It was, however, also, proved that he was a man of good habits; that there were no complaints against him, and that he had properly discharged his duties. This court will not weigh the evidence on these facts. It is sufficient that there was a legal and substantial basis shown for his removal, upon which the commissioners acted within

their authority. This disposes of the next reason assigned—that the evidence did not justify the removal.

The other reasons relate to the constitutionality of the act appointing commissioners of police. The "Act respecting police departments of cities, and regulating the terms of office of officers and men employed in said departments," above cited, has been passed on in *Fitzgerald* v. *New Brunswick*, 18 *Vroom* 479, affirmed in the Court of Errors and Appeals, 19 *Vroom* 457, 1886. Its constitutionality was sustained on the exceptions taken.

The other "Act to remove the fire and police departments in the cities of this state from political control," is now challenged.

The further question is presented whether the legislature has the power to say that of the four commissioners to be nominated by the mayor and confirmed by the council, two shall be selected from each of the two political parties which shall have cast or polled the greatest number of votes at the last preceding municipal election, and whether it can designate classes of citizens from which public offices shall be filled. But this prosecutor is not in a position to raise this disputed point. As in the Fitzgerald case and others, he might contest the authority to remove and retain officers, the formalities to be observed, and the constitutionality of the act under which such authority was given ; but the objection here made strikes at the official existence of the board of commissioners, and the judgment of this court, which is sought against them, would in effect be an ouster from their office by collateral proceeding. It would even go further and vacate the office which the prosecutor claims that he still holds ; for after the enactment of this law, he submitted himself to the authority of these commissioners for one year without objection, and in the language of the eighth section of the act, the commissioners, being fully authorized and empowered, " designated, appointed and approved" him as one of the policemen or persons employed in the police department of the city. He was already employed, and they continued his employment

as if they had again appointed him. While on this statement he might be a policeman *de facto,* he would not be such *de jure,* if his position, that there is not a legal board of commissioners, is correct. He cannot dispute their legal existence without determining his own, and the inconsistency of his attempt to annul the law is apparent. The question suggested might be raised, as in *Worthley* v. *Steen,* 14 *Vroom* 542, by the commissioners themselves, if on refusal to act, the attempt were made to compel them by *mandamus;* but if they continue to act under an alleged void or unconstitutional act appointing them, the remedy must be by direct proceeding and *quo warranto. State, ex rel. Gilbert,* v. *Patterson,* 3 *Vroom* 177; *State* v. *Tolan,* 4 *Vroom* 195; *State, Hoey, pros.,* v. *Collector of Ocean,* 10 *Vroom* 75–79.

The suit will be dismissed, with costs.