**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1585-23

PA BUILDERS, LLC, and
PATRICK A. ROBERTELLI,

      Plaintiffs-Appellants,

v.

TOWNSHIP OF TOMS RIVER,
ROBERT J. CHANKALIAN, PE,
CME, TOWNSHIP ENGINEER
OF THE TOWNSHIP OF TOMS
RIVER, and WENDY A. BIRKHEAD,
PE, CME, ASSISTANT
TOWNSHIP ENGINEER OF
THE TOWNSHIP OF TOMS RIVER,

      Defendants-Respondents.

_____

Submitted February 10, 2025 – Decided May 7, 2025

Before Judges Gooden Brown and Smith.

On appeal from the Superior Court of New Jersey, Law Division, Ocean County, Docket No. L-2436-22.

Shah Law Group, LLC, attorneys for appellants (Roshan D. Shah and John Regina, of counsel and on the briefs; Nina Swinarsky, on the briefs).

Kevin B. Riordan, LLC, attorney for respondents (Kevin B. Riordan, on the brief).

PER CURIAM

Plaintiffs PA Builders, LLC and Patrick Robertelli, PA Builders' managing member, appeal a December 15, 2023 Law Division order granting summary judgment for defendants Robert J. Chankalian, Wendy A. Birkhead, and the Township of Toms River (the Township). We affirm.

I.

In reviewing an order granting summary judgment, we view the facts established in a light most favorable to plaintiffs. See Friedman v. Martinez, 242 N.J. 449, 472 (2020).

The property in question is a residential lot and home on North End Drive in Toms River. In 2013, the Township informed the then-owners, the Mulligans, that they were out of compliance with municipal ordinances regulating property use in a flood zone and that any future construction would require elevation of the home.

On May 19, 2016, the Mulligans sold the property to plaintiffs. Before buying the property, Robertelli reviewed an email from Toms River's Disaster Recovery Ombudsman, Trevor Newman, regarding the elevation of the home:

A-1585-23

I have reviewed the submitted "Flood Elevation Certificate" and find that although your home was Substantially Damaged you are NOT required to elevate your home as it meets the Current FEMABFE.

It does fall short on the Venting requirement of one square inch of flood venting for each square foot of enclosed space.

Any new construction would require this building to comply with the one foot "Freeboard" requirement of the Toms River Flood Management Ordinance.

In May 2017, plaintiffs applied for zoning and building permits to install a pool on the property. The record shows that the permits were initially approved, with conditions. However, on July 25, 2017, the Township's assistant engineer, defendant Wendy Birkhead, informed plaintiffs' attorney that "no permits for any work can be issued until the structure is elevated to a minimum finished floor elevation of 8.0-feet." Plaintiffs constructed improvements to the property between 2017 and 2022 without securing the requisite permits. The improvements included installation of a hot tub, an outdoor shower, a retaining wall, and additional pavers.

On January 10, 2022, plaintiffs contracted to sell the property. Robertelli applied for a zoning permit, seeking retroactive approval for the unauthorized improvements. On March 25, the Township denied the zoning permit on several

3

grounds, including plaintiffs' failure to elevate the home. On October 27, 2022, the prospective buyer terminated the sale contract.

Plaintiffs sued defendants on November 3, 2022 for deprivation of their procedural, substantive due process, and equal protection rights under the New Jersey Civil Rights Act[1] (NJCRA), and for failing to properly train Robert J. Chankalian, the Township's engineer, and Birkhead. Plaintiffs' claims also included an estoppel count and an application for declaratory judgment relief.

Defendants moved for summary judgment. Plaintiffs opposed and cross-moved to compel discovery. The court granted defendants' motion for summary judgment and made findings.

The court found no evidence that defendants had engaged in any differential treatment of plaintiffs on the question of permitting. The court further found that defendants did not issue an erroneous email concerning flood plain elevation requirements. The court determined that plaintiffs could have availed themselves of the construction permit appeal process at all relevant times. Because plaintiffs could have promptly administratively appealed their permit denials in 2017, the court found plaintiffs were not deprived of their substantive due process rights.

---

[1] N.J.S.A. 10:6-1 to -2.

A-1585-23

Plaintiffs appealed, arguing that the trial court committed error by: granting summary judgment, limiting discovery, improperly inserting certain facts into the record while disregarding other facts; dismissing plaintiffs' failure to train claim; denying plaintiffs' cross-motion to compel discovery; and shortening the discovery period in NJCRA cases to sixty days. Plaintiffs also seek reinstatement of their claims for declaratory judgment and equitable and zoning estoppel upon remand.

## II.

In reviewing a court's decision to grant or deny a motion for summary judgment, we apply the same standard governing the trial courts. Boyle v. Huff, 257 N.J. 468, 477 (2024) (citing Samolyk v. Berthe, 251 N.J. 73, 78 (2022)). Under these standards, courts should grant a motion for summary judgment if they find that "there is no genuine issue as to any material fact challenged and that the moving party is entitled to a judgment or order as a matter of law." R. 4:46-2(c). "When no issue of fact exists, and only a question of law remains, [appellate courts] afford[] no special deference to the legal determinations of the trial court." Boyle, 257 N.J. at 477 (quoting Templo Fuente De Vida Corp. v. Nat'l Union Fire Ins. Co. of Pittsburgh, 224 N.J. 189, 199 (2016)).

"Determining whether a cause of action is barred by a statute of limitations is a question of law that we review de novo."  Save Camden Pub. Schs. v. Camden City Bd. of Educ., 454 N.J. Super. 478, 487 (App. Div. 2018) (citing Catena v. Raytheon Co., 447 N.J. Super. 43, 52 (App. Div. 2016)).

III.

A.

As a preliminary matter, we address plaintiffs' equitable estoppel claim and their request for declaratory relief, both of which were dismissed by the trial court.  Plaintiffs seeks reinstatement of both the estoppel claim and declaratory relief request if we decide to remand the case.  Because the record shows plaintiffs' didn't argue these issues when they were dismissed by the trial court, we review them under the plain error standard.  R. 2:10-2 ("Any error or omission shall be disregarded by the appellate court unless it is of such a nature as to have been clearly capable of producing an unjust result . . . .").

In analyzing plaintiffs' equitable estoppel claim, we are guided by our Supreme Court's decision in Meyers v. State Health Benefits Commission, 256 N.J. 94 (2023).

> On occasion, a court may be called upon to review equitable considerations in the context of government action, which may lead to the invocation of equitable estoppel principles.  That should be undertaken only

6

after the court has assessed the nature of the government action and determined that evaluation of the equities is necessary. Skulski v. Nolan, 68 N.J. 179, 198 (1975).

As this Court has previously recognized, the doctrine of "[e]quitable estoppel is 'rarely invoked against a governmental entity.'" Middletown Twp. Policemen's Benevolent Ass'n Local No. 124 v. Township of Middletown, 162 N.J. 361, 367 (2000) (quoting Wood v. Borough of Wildwood Crest, 319 N.J. Super. 650, 656 (App. Div. 1999)). Although it is "not applied as freely against the public as in the case of private individuals, the doctrine of estoppel may be invoked against a municipality to prevent manifest wrong and injustice." Gruber v. Mayor & Twp. Comm. of Raritan Twp., 39 N.J. 1, 14 (1962) (quoting Vogt v. Borough of Belmar, 14 N.J. 195, 205 (1954)). "Equitable considerations 'are relevant in assessing governmental conduct' and impose a duty on the court to invoke estoppel when the occasion arises." Middletown, 162 N.J. at 367 (quoting Wood, 319 N.J. Super. at 656). For instance, in Skulski, this Court found that the doctrine applied when pensioners detrimentally relied upon an award of disability pension benefits in deciding not to obtain full-time employment, thereby foreclosing the opportunity to secure alternate pension benefits. 68 N.J. at 199.

Before considering whether the equities require that a governmental entity be estopped from changing its position in a particular instance, the court must examine the precise nature of the governmental actions in question. Id. 68 N.J. at 198. That is because a governmental entity cannot be estopped from refusing to take an action that it was never authorized to take under the law -- even if it had mistakenly agreed to that action. See ibid. The law distinguishes between

7

actions otherwise within an entity's authority but marked by procedural irregularity and actions that are beyond the entity's authority:

> There is a distinction between an act utterly beyond the jurisdiction of a municipal corporation and the irregular exercise of a basic power under the legislative grant in matters not in themselves jurisdictional. The former are ultra vires in the primary sense and void; the latter, ultra vires only in a secondary sense which does not preclude ratification or the application of the doctrine of estoppel in the interest of equity and essential justice.
>
> [Middletown, 162 N.J. at 368 (quoting Skulski, 68 N.J. at 198).]

[Id. at 100-01.]

Here, plaintiffs claim that, when purchasing the property in 2016, they reasonably relied on the assertions of Toms River's Disaster Recovery Ombudsman, Trevor Newman, that the home did not need to be elevated. Plaintiffs argue that, given Newman's statement, the Township's decision to require elevation of the home in 2017 and 2022 constituted an "abrupt, sudden change in position [that] was arbitrary and capricious and violated plaintiffs' land use and constitutional rights." Plaintiffs' argument is contradicted by the record. The record shows that Newman, in an email reviewed by plaintiffs before their purchase of the property in March 2016, clearly stated that "[a]ny

8

new construction would require [the home] to comply with the one foot 'Freeboard' requirement of the Toms River Flood Management Ordinance." The Township's July 25, 2017 and March 25, 2022 denial of construction permits did not contradict Newman's email. Because the Township has not changed its position on the home needing to be elevated before further construction would be permitted, the doctrine of equitable estoppel does not apply in this matter.

The Declaratory Judgment Act (DJA)[2] also does not apply in this case. "Judicial review of decisions of agencies which are not state agencies is by a civil action 'In Lieu of Prerogative Writs' brought in the Law Division of the Superior Court, under R[ule] 4:69-1." Dolan v. City of East Orange, 287 N.J. Super. 136, 142 (App. Div. 1996). Plaintiffs' claims arise out of the Township's zoning office, a municipal agency, denying future permits for construction on plaintiffs' property until the house was elevated. The zoning officer's denial is not the type of municipal action that gives rise to a DJA claim. Contra Ballantyne House Assocs. v. City of Newark, 269 N.J. Super. 322, 330 (App. Div. 1993) (finding that challenges to the constitutionality of a municipal ordinance are "maintainable either as declaratory judgment actions . . . or as actions in lieu of prerogative writs . . . ." (citations omitted)).

---

[2] N.J.S.A. 2A:16-50 to -62.

Because neither the doctrine of equitable estoppel nor the DJA apply to the facts in this case, we find no unjust result and no plain error by the trial court in dismissing these two claims.

B.

We next address plaintiffs' NJCRA claims and defendants' statute of limitations defense.

Defendants argue that plaintiffs failed to file their NJCRA claims within the two-year statute of limitation period under N.J.S.A. 2A:14-2. Defendants contend that plaintiffs have been aware of the Township's refusal to permit new construction on the property since July 25, 2017, more than five years before plaintiffs filed suit.

Plaintiffs raise two arguments in reply. First, plaintiffs argue that the six-year statute of limitation under N.J.S.A. 2A:14-1, not the two-year statute of limitation under N.J.S.A. 2A:14-2, applies to their claims, and, thus, they successfully filed within the appropriate statutory period. Alternatively, plaintiffs contend that, even if N.J.S.A. 2A:14-2 applied, they filed within the appropriate timeframe because the underlying tortious act—defendants Chankalian and Birkhead demanding plaintiffs elevate the home before it could be sold—did not occur until 2022. We are unpersuaded by plaintiffs' arguments.

"The statute of limitations for claims under the NJCRA is two years." Lapolla v. Cty. of Union, 449 N.J. Super. 288, 298 (App. Div. 2017) (citing N.J.S.A. 2A:14-2(a)). N.J.S.A. 2A:14-2(a) states that "[e]very action at law for an injury to the person caused by the wrongful act, neglect or default of any person within this State shall be commenced within two years next after the cause of any such action shall have accrued . . . ."

"In general, our law in the private sector holds that a claim accrues on the date on which the underlying tortious act occurred." Ben Elazar v. Macrietta Cleaners, Inc., 230 N.J. 123, 134 (2017) (citing Beauchamp v. Amedio, 164 N.J. 111, 117 (2000)). "However, that same common law allows for delay of the legally cognizable date of accrual when the victim is unaware of his injury or does not know that a third party is liable for the injury." Ibid. (quoting Beauchamp, 164 N.J. at 117). This tolling doctrine is known as the "discovery rule." Caravaggio v. D'Agostini, 166 N.J. 237, 245 (2001). "At the heart of every discovery rule case is the issue of 'whether the facts presented would alert a reasonable person exercising ordinary diligence that he or she was injured due to the fault of another[.]'" Kendall v. Hoffman-La Roche, Inc., 209 N.J. 173, 191 (2012) (quoting Hardwicke v. Am. Boychoir Sch., 188 N.J. 69, 110 (2006)). "[W]here the relationship between plaintiff's injury and defendant's fault is not

self-evident, it must be shown that a reasonable person, in plaintiff's circumstances, would have been aware of such fault in order to bar [them] from invoking the discovery rule." Id. at 192.

Plaintiffs' claims arising under the NJCRA are subject to a two-year statute of limitation. The record shows plaintiffs knew no later than July 25, 2017 that "no permits for any work [could] be issued until the structure is elevated to a minimum finished floor elevation of 8.0-feet." (Emphasis added). A reasonable person would be aware that restrictions on new construction due to a failure to comply with municipal ordinances would impede the future sale of a property. See Kendall, 209 N.J. at 191. Applying the NJCRA two-year statute of limitations, plaintiffs were required to file their NJCRA claims no later than July 25, 2019. As such, plaintiffs' November 3, 2022 complaint was untimely. Because plaintiffs failed to file their NJCRA claims within time, we need not reach the merits.

To the extent that we have not addressed any other arguments by plaintiffs, it is because they lack sufficient merit to be discussed in a written opinion. R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

M. C. Harley

Clerk of the Appellate Division

A-1585-23